## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings |
| | Under Chapter 13 |
| | |
| MARY JEAN SYKES | Case No. 09-31479 |
| | |
| PAUL R. HANGSLEBEN | |
| DENISE E. HANGSLEBEN | Case No.  09-30131 |
| | |
| JAMES M. TURNBULL | |
| KIMBERLY A. TURNBULL | Case No. 09-30057 |
| | |
| RICHARD NELSON McCARTNEY | |
| CHERI ANN McCARTNEY | Case No.  10-30638 |

OPINION

These cases present the issue of whether in Chapter 13,  the Court may allow a late-filed claim where the creditor fails to receive notice of the bankruptcy filing prior to the expiration of the claims bar date.

FACTS

A.     *In re Sykes*– Case No. 09-31479

Debtor Mary Jean Sykes filed a Chapter 13 petition on June 8, 2009.  The Court established a claims bar date for non-governmental entities of October 19, 2009.  Due to an oversight by the debtor, creditor Surety Finance was not listed on the debtor's schedules, nor was it included on the creditor matrix.  Unaware of the bankruptcy, Surety Finance instituted a breach of contract action against the debtor in the St. Clair County Circuit Court on April 16, 2010, and, on August 16, 2010, obtained a judgment in the amount of $633.18.[1]  Approximately one week later, on August 24, 2010, Ms. Sykes filed an amended Schedule F in order to list several previously undisclosed creditors,

---

[1]The state court records indicate that the judgment was obtained by default and it does not appear that Ms. Sykes participated in that proceeding.

including Surety Finance.  On October 20, 2010, Surety Finance filed an unsecured claim in the amount of $924.33.  The Trustee objects to the claim on the grounds that it was untimely filed.  Both Surety Finance and the debtors have filed responses requesting that the Trustee's objection be overruled.

B.      *In re Turnbull*– Case No. 09-30057

James and Kimberly Turnbull filed a Chapter 13 petition on January 13, 2009.  While the parties have provided the Court with virtually no facts regarding this case, a review of the petition, schedules and creditor matrix reveals that the IRS was neither listed as a creditor nor received notice of the debtors' bankruptcy petition.  There is no indication in the record as to when the IRS actually learned that the debtors had filed bankruptcy.  However, it is clear that its November 9, 2010 claim was filed well past the governmental claims bar date of July 13, 2009.  The  proof of claim indicates that the debtors have outstanding federal tax liability for both the 2008 and 2009 tax years. *See* Proof of Claim #29-1.

The Trustee filed an objection to the IRS claim on November 10, 2010.  Although the Trustee initially requested that the IRS's claim be  disallowed in its entirety, he subsequently modified that request and now asks that the Court disallow only the portion of the claim that pertains to the debtors' 2008 taxes and penalties.[2]  *See* Trustee's Reply to Debtors' Response to Trustee's Objection to Untimely Claim filed by Internal Revenue Service (Doc. #58).  While the debtor has filed a reply requesting that the Trustee's objection be overruled, the IRS has not responded in any way to the

---

[2]The IRS filed a claim in the total amount of $4,745.62.  According to the attachment accompanying the claim, $1,969.66 of this amount represents the debtors' 2008 tax liability, penalties, and interest.  The remaining $2,775.96 is a claim for post-petition taxes pursuant to 11 U.S.C. § 1305.  The Trustee has no objection to the post-petition portion of the claim.

objection.[3]

C.    *In re McCartney*– Case No. 10-30638

Debtors Richard and Cheri McCartney filed their Chapter 13 petition on March 17, 2010.

The claims bar date for governmental entities was September 13, 2010.  At the time that the petition

was filed, the debtors had not yet filed their 2009 state and federal income tax returns.  However, a

review of their Schedule C indicates that the debtors anticipated receiving a refund.  After completing

their federal tax return, the debtors discovered that they were not  entitled to a refund, but, instead,

owed the IRS $4,109.00.[4]  Upon learning of this liability, the debtors were advised to send their tax

payment to the Chapter 13 Trustee, despite the fact that the IRS was neither listed in the debtors'

schedules nor provided for in their plan.  The Trustee, after using a portion of the funds to cure a plan

arrearage, refunded $2,971.50 to the debtors. The debtors acknowledge that these refunded monies

were not then forwarded to the IRS.  *See* Debtors' Consolidated Brief in Opposition to the Trustee's

Objections to Untimely Filed Claims at  pp 1-2.

On August 5, 2010, the debtors attempted to amend their plan to include not only the IRS

debt, but also their 2009 tax liability to the Illinois Department of Revenue.[5]  Due to a service error

---

[3]It should be noted that the debtors' counsel filed a one-paragraph Statement of Proposed Findings of Fact which states that the debtors failed to schedule the debt to the IRS "based on the misapprehension that, being under a non-bankruptcy repayment plan with the IRS prior to filing their bankruptcy petition, they did not have to report the debt as owed."  Debtor's Statement of Proposed Findings of Fact (Doc. # 62).  The taxes at issue in this case are for the 2008 tax year and, therefore, would have been payable in 2009, *i.e. after* the debtors filed their petition on January 19, 2009.  It is not clear to the Court what taxes were subject to a repayment plan or how this affects the taxes at issue.

[4]Unfortunately, the debtors do not indicate when they learned of this tax liability.  However, if the taxes were prepared and filed on time, the debtors would have been aware of this debt no later than April 15, 2010.

[5]Interestingly, the debtors amended their petition on June 28, 2010, to list the previously excluded  Illinois Department of Revenue (IDR) and the IDR filed a timely proof of claim.  The amended petition did not, however, list the Internal Revenue Service.

(debtors' counsel failed to serve a copy of the amended plan on the IRS), debtors refiled their amended plan on August 17, 2010.   At the time that the amended plan was served on the IRS, the claims bar date had not yet expired.

On September 27, 2010–two weeks after the expiration of the claims bar date– the IRS filed its original unsecured priority claim in the amount of $2,335.12.[6] The Trustee objects to creditor's claim as untimely and requests that it be disallowed. The debtors have filed a response to the Trustee's objection and request that it be overruled.  As in *Hangslaben* and *Turnbull*, the IRS has not filed a written response to the Trustee's objection.


D.      *In re Hangsleben*– Case No. 09-30131

The *Hangsleben* case was taken under advisement on the Chapter 13 Trustee's objection to a late claim filed by the Internal Revenue Service.  On March 18, 2011, the case was converted to a proceeding under Chapter 7.  Hence, the Chapter 13 Trustee's objection is now moot.


## ANALYSIS

A.      The Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3002(c)

The Court begins its analysis with an examination of Section 502 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3002(c).  Section 502 provides, in pertinent part:

(a)      A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects.

(b)      . . . if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . except to the extent that–

(9)      proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of

---

[6]The claim has subsequently been amended and reduced to $5,256.00 (Claim #18-3).

> section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide, and except that in a case under chapter 13, a claim of a governmental unit for a tax with respect to a return filed under section 1308 shall be timely if the claim is filed on or before the date that is 60 days after the date on which such return was filed as required.

11 U.S.C. § 502.

Section 502(b)(9) was specifically added to the Bankruptcy Code by the Bankruptcy Reform Act of 1994 to address untimely claims. Prior to this amendment, there was no statutory basis for disallowing claims filed after the bar date. Consequently, a line of cases emerged which permitted such claims, even in the face of objection. *See In re Hausladen*, 146 B.R. 557 (Banrk. D. Minn. 1992); *In re Babbin*, 164 B.R. 157 (Bankr. D. Colo. 1994). These cases reasoned that the absence of a filing deadline under the Code meant that Congress did not intend to bar tardily-filed claims in Chapter 13. Congress obviously disagreed, as § 502(b)(9) was expressly "designed to overrule *In re Hausladen* and its progeny by disallowing claims that are not timely filed." H.R. Rep. 103-834, 103rd Cong., 2nd Sess. 25-26 (Oct. 4, 1994); 140 Cong. Rec. H10768 (Oct. 4, 1994). The statute is now clear that "in the event a proof of claim is not filed in a timely fashion and if no exceptions apply, . . .*the claim is statutorily barred.*" *Matter of Greenig*, 152 F.3d 631, 633 (7th Cir. 1998) (emphasis added).

In order to determine whether a claim has been timely filed, one must look to Federal Rule of Bankruptcy Procedure 3002, which prescribes the time limits and procedure for filing proofs of claim. As a general rule, creditors are required to file a proof of claim within 90 days after the first date set for the § 341 meeting of creditors. Fed. R. Bankr. P. 3002(c). However, Rule 3002(c) provides six exceptions to this 90-day rule. These exceptions are:

(1)    a proof of claim filed by a governmental unit, other than for a claim resulting

from a tax return filed under § 1308, is timely filed if it is filed not later than 180 days after the date of the order for relief.  A proof of claim filed by a governmental unit for a claim resulting from a tax return filed under § 1308 is timely filed if it is filed no later than 180 days after the date of the order for relief or 60 days after the date of the filing of the tax return.  The court may, for cause, enlarge the time for a governmental unit to file a proof of claim only upon motion of the governmental unit made before expiration of the period for filing a timely proof of claim.

(2)    in the interest of justice and if it will not unduly delay the administration of the case, the court may extend the time for filing a proof of claim by an infant or incompetent person or the representative of either.

(3)    an unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in the property.  If the judgment imposes a liability which is not satisfied, or a duty which is not performed within such period or such further time as the court may permit, the claim shall not be allowed.

(4)    a claim arising from the rejection of an executory contract or unexpired lease of the debtor may be filed within such time as the court may direct.

(5)    if notice of insufficient assets to pay a dividend was given to creditors under Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall give at least 90 days' notice by mail to creditor of that fact and of the date by which proofs of claim must be filed.

(6)    if notice of the time to file a proof of claim has been mailed to a creditor at a foreign address, on motion filed by the creditor before or after the expiration of the time, the court may extend the time by not more than 60 days if the court finds that the notice was insufficient under the circumstances to give the creditor a reasonable time to file a proof of claim.

Fed. R. Bankr. P. 3002(c)(1)-(6).    The deadlines prescribed by Rule 3002(c) have been "strictly construed as a sort of statute of limitations that cannot be extended for any reason except for those explicitly enumerated situations in which the bankruptcy court may extend the deadline."  *In re Wright*, 300 B.R. 453, 458 (Bankr. N.D. Ill. 2003).  As the Seventh Circuit explained in *Greenig*, "unless one of these . . exceptions applies, *the 90-day time limit is an absolute bar*. . . .[because] 'the court may enlarge the time for taking action under [Rule] . . . 3002(c). . . *only* to the extent and under

6

the condition stated in [that rule].'" *Greenig*, 152 F.3d at 634, *citing* Fed. R. Bankr. P. 9006(b)(3) (emphasis added).

The parties acknowledge that none of the above-referenced exceptions apply in the cases at bar. Nonetheless, the debtors and creditor Surety Finance (hereinafter referred to collectively as "Respondents") maintain that the Court should still allow the tardily-filed claims because neither Surety Finance nor the IRS received notice of the debtors' bankruptcy filings in sufficient time to file proofs of claim. A review of the record indicates that in *McCartney*, the IRS **did** receive notice of the debtors' bankruptcy filing prior to the expiration of the claims bar date and, if nothing else, could have at least requested an extension of time as provided in Rule 3002(c)(1). It did not do so and, consequently, its claim is clearly barred by the plain language of § 502(b)(9) and the Seventh Circuit's directive in *Greenig*. All further discussion in this opinion shall apply only to the *Sykes* and *Turnbull* cases.

"Lack of notice" is not one of the enumerated exceptions to Rule 3002(c)'s filing deadlines. However, relying on *In re Chapman*, 265 B.R. 796 (Bankr. N.D. Ill 2001) and *In re Tarbell*, 431 B.R. 826 (Bankr. W. D. Wis. 2010) , the Respondents assert that "implicit in Section 502(b)(9) and Rule 3002(c) is the assumption that the creditor has received notice of the bankruptcy." *Chapman*, 265 B.R. at 809. The Court disagrees. Certainly, there is an *expectation* that debtors will provide notice to all of their creditors, as section § 521(a)(1)(A) requires debtors to file a list of creditors, which is then used by the Clerk of the Court to provide notice of the bankruptcy and other pertinent information. *See* 11 U.S.C. § 342 and Fed. R. Bankr. P. 2002. *et. seq.* However, the Code expressly acknowledges that proper notice may not always be provided. For instance, 11 U.S.C. § 523(a)(3) excepts from discharge debts that are "neither listed nor scheduled under § 521(1) . . . ." Similarly, § 726(a)(2) of the Bankruptcy Code permits a late claimant in Chapter 7 to share in the distribution with timely filed claims if "the creditor that holds such claim did not have notice or actual knowledge

7

of the case in time for timely filing a proof of such claim."  11 U.S.C. § 726(a)(2). Rather than some

sort of "implied notice," provisions such as  §§ 523(a)(3) and 726(a)(2) evidence an intent by

Congress to limit the "lack of notice" defense to certain prescribed situations.  Unfortunately for the

Respondents, the Chapter 13 claims process is not one of those situations.   As the Court observed

in *In re Jensen*: "Congress' failure to adopt a . . . rule [similar to § 726(a)(2)] for chapter 13 is strong

statutory evidence that tardily filed claims in chapter 13 are not to share in distributions under a

confirmed chapter 13 plan *even when the creditor was not given notice of the bankruptcy case until

after the bar date*." *In re Jensen*, 333 B.R. 906 (Bankr. M.D. Fla. 2005) *quoting In re Barnes*, 2004

WL 3135459 at *1 (Bankr. D. Dist. Col.) (emphasis added).   Given the clear and unambiguous

language of Rule 3002(c) and the absence of any statutory provision authorizing late-filed claims,

this Court  concludes that it cannot extend the deadline for a  Chapter 13 creditor to file a proof of

claim over objection, even where the creditor failed to receive notice of the bankruptcy filing.

B.   Due Process

        In so holding, the Court rejects the Respondents' contention that barring such claims violates

the Due Process Clause of the United States Constitution, at least under the facts as presented in the

cases at bar.  The Fifth Amendment to the Constitution provides that "[n]o person shall be . . .

deprived of life, liberty, or property without due process of law." U.S. CONST. amend. V.  Due process

extends to all persons and corporate entities, and, although governmental units do not have a

constitutional right to due process, they "must receive notice that satisfies the requirements of

fundamental fairness."[7]  *In re Swanson*, 312 B.R. 153 (Bankr. N.D. Ill. 2004), *citing U.S. v.

Hairopoulos (In re Hairopolous)*, 118 F.3d 1240, 1244 n. 3 (8th Cir. 1997).  There is no dispute  that

---

        [7]It should be noted that the IRS has not alleged a violation of its "due process" rights; the
debtors have raised the issue on the government's behalf.  Because creditor Surety Finance has
also made due process claims, the Court will not address whether the debtors have standing to
assert a due process right on behalf of another entity.

at least some of the creditors here did not receive notice of the bankruptcy filing in time to participate in the claims process.  However, lack of notice alone does not constitute a due process violation; there must also be a deprivation of property.  As Justice Jackson explained in *Mullane v. Central Hanover Bank & Trust Co.*:

> Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that *deprivation of life, liberty, or property by adjudication* be preceded by notice and opportunity for hearing appropriate to the nature of the case.

339 U.S. 306, 70 S. Ct. 652, 94 L.Ed 865 (1950) (emphasis added).   Certainly, the Respondents right to collect the monies owed to them constitutes a significant property right.  However, the Respondents have failed to demonstrate that this right will be extinguished if they are barred from filing proofs of claim.  This is because the Bankruptcy Code affords creditors without notice several remedies– such as non-dischargeability of their debts and relief from the automatic stay– which "rectif[y] any due process concerns raised by the severe and inflexible nature of the claims-allowance procedure. . . ."  *In re Wright*,  300 B.R. at 466.  The Respondents' right to collect in these cases is not eliminated but, rather, is merely tolled.  *See In re Herndon*, 188 B.R. 562, 565 (Bankr. E.D. Ky. 1995) ("[d]ue process concerns are not implicated; the right of the IRS to collect its claim is simply abated until the plan payments are completed.").

The Chapter 13 discharge provisions are found in 11 U.S.C. § 1328.  Generally,  a Chapter 13 debtor who completes their payments under the plan is granted a discharge of all debts which were "provided for by the plan or disallowed under section 502" of the Bankruptcy Code. 11 U.S.C. § 1328(a). There are, however, several notable exceptions to the Chapter 13 "super" discharge. Specifically,  § 1328(a)(2) excepts from Chapter 13 discharge any debt of the kind specified in § 523(a)(3).   Section 523(a)(3) states:

> (a)    A discharge under . . . § 1328(b) of this title does not discharge an individual debtor from any debt–

9

* * *

    (3)      neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit–

           (A)    . . . timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

11 U.S.C. § 523(a)(3)(A). This section, which was made applicable to all Chapter 13 cases by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, is designed to protect creditors who have been precluded from filing proofs of claim due to lack of notice.

Likewise, an unlisted creditor may also seek relief from the automatic stay as a means of protecting their property interest. Section 362(d)(1) of the Bankruptcy Code authorizes the Court to modify the automatic stay for "cause." As the court explained in *Wright*:

> To determine whether relief from stay is warranted, courts consider such factors as interference with the bankruptcy case; the relative hardship and prejudice to the creditor/movant, to other creditors (i.e. the bankruptcy estate), and to the debtor from granting or not granting relief; the good or bad faith of the debtor; and the creditor/movant's likelihood of success on the merits (if applicable). *In re Wrobel*, 197 B.R. 289, 296 (Bank. N.D. Ill. 1996); *In re Blue*, 247 B.R. 748, 752 (Bankr. N.D. Ill. 2000). The Seventh Circuit has instructed that relief is appropriate when 'equitable considerations weigh heavily in favor of the creditor and the debtor bears some responsibility for creating the problems.' *International Business Machines v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.)*, 938 F.2d 731, 735 (7th Cir. 1991). Bankruptcy courts have modified the stay when a debtor's failure to schedule or list a creditor prevented it from filing a proof of claim, and thereby participating in the bankruptcy case. *See In re Wrobel*, 197 B.R. at 296. Relief from the stay normally restores the creditor to all of its pre-petition collections rights and remedies. *In re Brogden*, 274 B.R. 287, 293 (Bankr. M.D. Tenn. 2001).

*In re Wright*, 300 B.R. at 466. Hence, because the Bankruptcy Code provides remedies for preserving unscheduled creditors' collection rights, this Court finds that the due process clause is not implicated.

10

C.    Equitable Tolling

The Respondents maintain that prohibiting the tardily-filed claims in this case will not only adversely affect the creditors, but will unfairly impact the debtors as well.[8]  While acknowledging that the bankruptcy court cannot allow late filed claims based solely on its general equitable powers under 11 U.S.C. § 105(a),[9]  Respondents argue that the Court may permit such claims "for other equitable reasons."  *See In re Sykes*, 09-31479, Debtors' Consolidated Brief in Opposition to the Trustee's Objection to Untimely Filed Claims, at p.3.  Specifically, the Respondents argue that the Court may employ the doctrine of equitable tolling in order to mitigate the harsh consequences of these otherwise inflexible deadlines.  The Court disagrees.

The Supreme Court has recognized that "statutory filing deadlines are generally subject to the defenses of waiver, estoppel and equitable tolling."  *United States v. Locke*, 471 U.S. 84, 94 n. 10, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985).  However, the tolling doctrine is not permitted where to do so would be "inconsistent with the text of the relevant statute."  *United States v. Beggerly*, 524 U.S. 38, 48, 118 S.Ct. 1862, 141 L.Ed. 2d 32 (1998). The Respondents have not cited, nor has the Court's research revealed, any cases where a court has employed equitable tolling to circumvent the explicit

---

[8]Debtors assert that they will most likely be forced to dismiss their bankruptcy cases and refile in order to address the previously unscheduled claimants, which is both expensive and time consuming.  Further, debtors point out that if they chose to remain in the cases as filed and the unscheduled creditors obtain relief from the automatic stay, debtors could have reduced disposable income with which to fund their plan due to creditor garnishments.

[9]  Section 105(a) of the Bankruptcy Code provides:

(a) The Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

deadlines imposed by 11 U.S.C. § 502(b)(9) and Rules 3002(c) and 9006(b)(3).  Instead, the existing

authority suggests that equitable tolling may *not* be used as a mechanism to allow otherwise untimely

filed claims.

      The United States Court of Appeals for the Ninth Circuit addressed the issue of whether the

§ 502(b)(9) deadline for governmental claims was subject to equitable tolling in *In re Gardenshire*,

209 F.3d 1145 (9th Cir. 2000).  In *Gardenshire*, the debtors filed a Chapter 13 petition on September

10, 1996.   Listed among the debtors' creditors was the IRS, which, pursuant to 11 U.S.C.

§ 502(b)(9), was required to file its proof of claim within 180 days of the order of relief.

Unfortunately, during the 180-day filing period, the debtors' case was erroneously dismissed.  The

error was eventually discovered and the case was reinstated on February 19, 1997– 79 days after the

dismissal. When the IRS received notice of the reinstatement, there were still thirteen days in which

for it to file a timely proof of claim or request for an extension of time.  It failed to do so and,

instead, filed its claim eleven days after the expiration of the deadline.  In response to the debtors'

objection, the IRS maintained that its claim was still "timely" because the 180-day filing period was

tolled for the 79 days that the case had been dismissed. *Id.* at 1146-47.

      In rejecting the IRS's argument, the Court  focused on the plain language of § 502(b)(9) and

Bankruptcy Rules 3002(c)(1) and 9006(b)(3), noting that "'[w]here the statutory language is clear,

[the Court's] sole function . . . is to enforce it according to its terms.'" *Id.* at 1148, *quoting Rake v.

Wade*, 508 U.S. 464, 471, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). Based on a strict interpretation,

the *Gardnshire* court concluded  that Rules 3002(c) and 9006(b) imposed  a "rigid deadline" that was

not subject to equitable exception. *Gardenshire*, 200 F.3d at 1148, 1150.

      It is interesting to note that in its discussion, the *Gardenshire* court relied, in part, on  the

Seventh Circuit's decision in *In re Greenig*.  As the Court explained:

      Our decision that equitable tolling cannot be used to extend the filing period of 11

U.S.C. § 502(b)(9) is supported by the weight of authority from outside the Ninth Circuit. First, no other court of appeals has applied the doctrine of equitable tolling to 11 U.S.C. § 502(b)(9). Indeed, the Seventh Circuit's recent decision in *In re Greenig,* 152 F.3d 631 (7th Cir. 1998) *strongly suggests that it would disapprove of using equitable tolling to excuse non-compliance with the clearly specified time requirements of the Bankruptcy Rules.* The bankruptcy court in *Greenig* allowed creditor UF to file a late proof of claim in a Chapter 12 case, finding that it was 'equitable' to do so in light of certain improper conduct by the debtors. *Id.* at 633. The Seventh Circuit reversed, holding that because none of the exceptions in Bankruptcy Rule 3002(c) applied to permit the late filing, UF's claim was statutorily precluded: 'Considering that 11 U.S.C. § 502(b)(9) bars untimely proofs of claim where none of the 3002(c) exceptions apply, we hold that UF's claim is barred.' *Id.* at 634. The *Greenig* court noted that although a bankruptcy court has equitable power, it '*cannot use its equitable power to circumvent the law.*' *Id.* at 635. The Seventh Circuit concluded that the bankruptcy court 'acted improperly in that it allowed UF to circumvent Rule 3002(c) and file an untimely proof of claim because of equitable considerations.' *Id.*

*Gardenshire*, 209 F.3d at 1151 (emphasis added).

Certainly, bankruptcy courts are courts of equity. However, the Seventh Circuit has made it abundantly clear that this equitable power "must be exercised within the confines of the Bankruptcy Code," *In re Lloyd*, 37 F.3d 271, 275 (7th Cir. 1994) and has "warned that a judge does not have 'free-floating discretion to redistribute rights in accordance with his personal views of justice and fairness, however enlightened those views may be.'" *Matter of Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 791 F.2d 524, 528 (7th Cir. 1986). Because there is no statutory authority for allowing tardily-filed claims in the instant cases, this Court is without grounds–legal or otherwise– to extend the filing deadlines.[10]

---

[10]Even if the Court were to find that equitable tolling may be used to extend the claims deadline under § 502(b)(9) and Rule 3002(c), it is not at all clear that the doctrine would be applicable in this case. "Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). Here, neither the IRS nor Surety Finance– the injured claimants– have requested that the claims period be tolled. Rather, the defense has been raised by *debtors* Mary Jean Sykes and Richard and Cheri McCartney, who appear to be asserting the defense on creditors' behalf. As debtors hold no claims subject to being barred under § 502(b)(9), it is uncertain as to whether they even have standing to raise an equitable tolling defense.

D.    Federal Rule of Bankruptcy Procedure 3004

The Court notes that a creditor whose claim is barred by § 502(b)(9), may, under certain circumstances, still be able to participate in the bankruptcy claims process.  Federal Rule of Bankruptcy Procedure 3004  provides:

> If a creditor does not timely file a proof of claim under Rule 3002(c) or 3003(c), the debtor or trustee may file a proof of the claim within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c), whichever is applicable. . . .

Fed. R. Bankr. P. 3004.  Unlike Rule 3002(c), the time for filing claims under Rule 3004 is subject to enlargement.   Pursuant to Rule 9006(b)(1), a court, in its discretion, may extend the deadline for filing a claim under Rule 3004 for "cause shown," if the request for an extension is made prior to the expiration of the 30-day deadline.  Fed. R. Bankr. P. 9006(b)(1).   After the expiration of the deadline, the Court may only enlarge the time for filing a claim upon motion and a showing that the movant's "failure to act was the result of excusable neglect."  *Id.*

The issue of whether Rule 3004 is available to the debtors in the instant cases is not properly before the Court, as  no motions for enlargement of time pursuant to Rule 9006(b)(1) have been filed,[11] nor has any evidence regarding "excusable neglect" been presented. The Court offers this section at this time merely  as a means of illustrating alternative relief available to the Respondents.

E.  Bad Faith

Finally, certain Respondents contend that the Trustee's objections to creditors' untimely claims were not made in good faith.  As indicated at the hearing on this matter, the Court  believes

---

[11]At hearing, counsel for debtors Sykes and McCartney initially made an oral motion to permit the debtors to file proofs of claim on behalf of the IRS and Surety Finance.  However, counsel subsequently decided to "reserve" the issue, pending the Court's ruling on the Trustee's objections to the creditors' claims.

that the Trustee acted completely within the requirements of his job in bringing these objections and finds that they are neither frivolous nor in bad faith.

F.      Conclusion

Based on the foregoing analysis, this Court concludes that it does not have the authority to allow a creditor's untimely filed claim in Chapter 13, over objection, even if the creditor was not provided with notice of the bankruptcy filing in sufficient time to file a timely proof of claim. Accordingly, the Trustee's objections in *Sykes*, *McCartney* and *Turnbull* cases are sustained.  The Trustee's objection in *Hangsleben* is overruled as moot.

A separate order shall enter.

ENTERED: April 6, 2011

                              _____/s/ Laura K Grandy_____
                              UNITED STATES BANKRUPTCY JUDGE